IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal No. 3:18-cr-97

TRINIDAD DIAZ-MARTINEZ,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the Defendant's MOTION TO RECONSIDER PORTION OF OPINION DENYING MOTION TO DISMISS RELATING TO LACK OF EVIDENCE THAT MR. DIAZ WOULD HAVE APPLIED FOR VOLUNTARY DEPARTURE (the "MOTION TO RECONSIDER") (ECF No. 51). By ORDER (ECF No. 50) and accompanying MEMORANDUM OPINION (ECF No. 49) (collectively, the "Motion Ruling") entered on May 1, 2019, the Court denied Trinidad Diaz-Martinez's ("Diaz-Martinez") MOTION TO DISMISS INDICTMENT (ECF No. 18). Diaz-Martinez now moves the Court to reconsider a portion of the Motion Ruling. ECF No. 51.

The Court has considered the MOTION TO RECONSIDER (ECF No. 51), the sworn declaration attached thereto (ECF No. 51-1), and the Government's RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER (ECF No. 52).[1] For the following reasons, the Defendant's MOTION TO RECONSIDER PORTION OF OPINION DENYING MOTION

---

[1] Counsel for Diaz-Martinez informed the Court by email that she would not file a reply brief.

TO DISMISS RELATING TO LACK OF EVIDENCE THAT MR. DIAZ WOULD HAVE APPLIED FOR VOLUNTARY DEPARTURE (ECF No. 51) will be denied.[2]

**A. Legal Framework**

Motions to reconsider are available in criminal cases in limited circumstances. See United States v. Dickerson, 166 F.3d 667, 678-80 (4th Cir. 1999) (adopting abuse of discretion standard for reviewing district court's denial of motion to reconsider following a ruling on a motion to suppress), rev'd on other grounds, Dickerson v. United States, 530 U.S. 428 (2000); United States v. Harris, 2014 WL 5797762, at *1-7 (D. Md. Nov. 6, 2014) (denying defendant's motion to reconsider suppression ruling); United States v. Gentry, 2011 WL 13172169, at *1-2 (D.S.C. April 7, 2011) (denying Government's motion for reconsideration of order granting new trial); United States v. Wilson, 120 F. Supp. 2d 550, 553-54 (E.D.N.C. 2000) (denying Government's motion to reconsider the Court's order dismissing indictment).

For motions to reconsider suppression rulings, the Fourth Circuit has adopted the following rule: "[W]hen the evidence forming the basis for a party's motion of reconsideration was in the movant's possession at the time of the initial hearing. . .the movant must provide a legitimate reason for failing to introduce

---

[2] The factual and procedural background of this case is fully set forth in the Court's May 1, 2019 MEMORANDUM OPINION (ECF No. 49), and will not be recounted again here.

that evidence prior to the district court's ruling on the motion to suppress." Dickerson, 166 F.3d at 679. In adopting this rule, the Fourth Circuit recognized that "the district court has a strong interest in controlling its docket and avoiding piecemeal litigation." Id. Other courts have followed the Dickerson rule for motions to reconsider in contexts other than suppression rulings, and the parties have identified no contrary authority. See Gentry, 2011 WL 13172169, at *1-2; Wilson, 120 F. Supp. 2d at 553. Thus, the Court will follow the Dickerson rule here.

In Dickerson, the Government had "numerous opportunities to introduce the evidence prior to the district court's ruling" on the motion. 166 F.3d at 679. The Government argued that it did not introduce the evidence before the court's ruling because: (1) it did not believe that the district court would find a particular witness believable; and (2) it did not want to burden the court with cumulative evidence. See id. at 678-80. The Fourth Circuit held that the district court did not abuse its discretion in not considering this "evidence that was in the Government's possession at the time of the initial hearing." Id. at 680.

It is also important to recognize that, to succeed on a collateral challenge under 8 U.S.C. § 1326(d), it is the alien's burden to demonstrate that he satisfies the statute's requirements. See United States v. El Shami, 434 F.3d 659, 663 (4th Cir. 2005); United States v. Galcia, No. 1:15cr59, 2016 WL

3

4054926, at *2 (E.D. Va. July 26, 2016). To show that he satisfies the prejudice portion of 8 U.S.C. § 1326(d)(3), Diaz-Martinez must proffer evidence establishing that, "but for the errors complained of [in his 1997 deportation proceedings], there was a reasonable probability that he would not have been deported." El Shami, 434 F.3d at 665; United States v. Lopez-Collazo, 824 F.3d 453, 462 (4th Cir. 2016).

### B. Analysis

The MOTION TO RECONSIDER asks the Court to reconsider its finding that "no evidence existed in the record to support a finding that Mr. Diaz would have applied for pre-conclusion voluntary departure." ECF No. 51 ¶ 1; Mem. Op. at 36-39. In support of the MOTION TO RECONSIDER, Diaz-Martinez provides, for the first time, a sworn declaration that avers, in relevant part:

> I understand from my lawyer that in 1997, I would have been eligible for voluntary departure, meaning I could have agreed to return to El Salvador voluntarily without an immigration judge ordering that I be removed from the United States.
>
> If I had been granted a voluntary departure, I had money saved that I could have paid to travel back to El Salvador voluntarily. My uncle and other family members would have been able to help as needed as well. I would have accepted the voluntary departure.

ECF No. 51-1 ¶¶ 5-6. "Mr. Diaz asks the Court to consider this evidence and reconsider its finding that no evidence exists in the record to indicate that Mr. Diaz would have applied for

4

voluntary departure." ECF No. 51 ¶ 4.

At bottom, Diaz-Martinez asks the Court to consider evidence that he could have presented at several points during the Court's consideration of the MOTION TO DISMISS INDICTMENT (ECF No. 18). Diaz-Martinez briefed the MOTION TO DISMISS INDICTMENT (ECF Nos. 18 and 20), participated in an evidentiary hearing on November 27, 2018, and filed two rounds of supplemental briefing following the November 27 hearing (ECF Nos. 34, 38, 39, 44, 48). At no point during that process did Diaz-Martinez raise the evidence that he now asks the Court to consider. Accordingly, the MOTION TO RECONSIDER falls squarely within the rule articulated in Dickerson. It is thus necessary to consider whether Diaz-Martinez has a "legitimate reason" for not providing the evidence prior to the Court's Motion Ruling. See 166 F.3d at 679.

Diaz-Martinez asserts that he did not provide this evidence sooner "because other cases and courts have not found such evidence necessary for a defendant in a § 1326 case to establish prejudice based on an individual's eligibility for pre-conclusion voluntary departure at the time of his removal hearing." ECF No. 51 ¶ 2. In support of this assertion, Diaz-Martinez cites to United States v. Ramos-Delcid, 2018 WL 5833081, at *7 (W.D. Va. Nov. 7, 2018); Lopez-Collazo, 824 F.3d at 465;[3] and United States

---

[3] Lopez-Collazo is the only Fourth Circuit authority cited by Diaz-Martinez and it is not on point. Lopez-Collazo dealt with

5

v. Merino-Hernandez, 46 F. Supp. 3d 602, 609 n.12 (D. Md. 2014). Simply put, those cases do not hold that evidence that an alien would have applied for voluntary departure is unnecessary in a Court's consideration of a collateral challenge under 8 U.S.C. § 1326(d).[4] Instead, they simply did not consider or opine on the point, or are unclear about what evidence was before the Court when it decided the collateral challenge under Section 1326(d). The absence of such consideration or opinion is not ground to reopen the record and reconsider the decision. Diaz-Martinez provides no authority to the contrary.

---

expedited removal procedures for aliens convicted of "aggravated felonies" (not at issue here). 824 F.3d at 456-60. An alien convicted of an "aggravated felony" is statutorily ineligible for discretionary forms of relief, like voluntary departure. See id. at 457. Because the Fourth Circuit determined that Lopez-Collazo had been convicted of an "aggravated felony," he was statutorily ineligible for voluntary departure and, therefore, could not demonstrate prejudice. See id. at 462-67. Thus, in Lopez-Collazo, the alien's eligibility for voluntary departure (and thus, his ability to demonstrate prejudice) collapsed upon the Court finding that he had been convicted of an "aggravated felony." That factual scenario is not before the Court in this case.

[4] It is true that the Court in Merino-Hernandez stated in a footnote that "there is no showing that the Defendant—with a properly explained understanding of his rights—would not have sought voluntary removal. . . ." 46 F. Supp. 3d at 609 n.12. However, the Court cites no authority for this proposition. And, earlier in the opinion, the Court noted that "the Defendant must show that the aforementioned requirements [of Section 1326(d)] are met." Id. at 606. Thus, it is unclear how the Court in Merino-Hernandez reached the conclusion that it did as to the prejudice prong of Section 1326(d)(3). The case does not establish that it is improper to require evidence that an alien would have applied for voluntary departure.

6

As discussed above, it was Diaz-Martinez's burden to demonstrate that he satisfied all of the requirements of Section 1326(d). He failed to do that before the Motion Ruling and now asks for "another bite at the apple." Harris, 2014 WL 5797762, at *4. He has not provided a "legitimate reason" to get such an opportunity.

In any event, the evidence proffered by Diaz-Martinez only goes to one portion of the Court's prejudice ruling. See Mem. Op. at 34-39. It does not address the Court's findings about Diaz-Martinez's lack of family ties in the United States and his short time in the United States. See In re Arguelles-Campos, 22 I. & N. Dec. 811, 817 (BIA 1999). In short, the evidence proffered by Diaz-Martinez does not establish that, even had he applied for voluntary departure, there is a "reasonable probability" that an immigration judge would have exercised his discretion and granted it.[5]

Additionally, if Diaz-Martinez were permitted to do this end-

---

[5] For example, in United States v. Almanza-Vigil, during a hearing on the motion to dismiss the indictment, the alien presented evidence from an "immigration-law expert," who testified about the alien's eligibility for and the likelihood of receiving cancellation of removal and voluntary departure. 912 F.3d 1310, 1325-27 (10th Cir. 2019). Even with such evidence in the record to guide the assessment of Almanza-Vigil's voluntary departure claim, the Tenth Circuit held that the alien could not demonstrate prejudice. See id. Here, the Court has no such evidence to guide the inquiry, and Diaz-Martinez does not proffer it as part of the MOTION TO RECONSIDER.

around on the evidence in the record at the time of the Motion Ruling, it would only be fair that the Government be permitted to re-open the record too. Indeed, parts of Motion Ruling rested on findings that the Government presented weak evidence on the issue of service of the notices of Diaz-Martinez's 1997 immigration proceeding. See Mem. Op. at 16-17, 25, 30, 32 (ECF No. 49). If the Government were permitted to submit additional evidence in this case, it could cause a wholesale reconsideration of the Motion Ruling. Such a result is contrary to Dickerson. 166 F.3d at 679 (noting how "the district court has a strong interest in controlling its docket and avoiding piecemeal litigation"). And, a result of that sort would lead to never-ending litigation over points that counsel did not, but could have, put in the record. Our system does not contemplate that a party can be permitted to try to patch up a record after the Court has ruled against him.

Finally, as the Government points out in its response brief, allowing Diaz-Martinez to submit this self-serving declaration at this stage of the case "denies the government the opportunity to rebut this testimony." ECF No. 52 at 4. Evidence (offered more than 20 years after the fact) that Diaz-Martinez would have sought voluntary departure in 1997 is certainly called into question by other evidence in the record, such as the fact that Diaz-Martinez did not show up to be removed in 1999 after he was informed of his imminent removal. See Mem. Op. at 38 n.24; ECF No. 52 at 4.

The MOTION TO RECONSIDER and Diaz-Martinez's declaration deprive the Government of an opportunity to rebut the evidence presented therein. Instead, the Motion Ruling stands on the evidence available to the Court at the time it was made, and Diaz-Martinez will have the opportunity to appeal the Motion Ruling in the normal course. See Harris, 2014 WL 5797762, at *4 ("Once a court has issued its ruling,. . .that should end the matter, at least until appeal.") (citing Potter v. Potter, 199 F.R.D. 550, 553 (D. Md. 2001)).

### C. Conclusion

For the foregoing reasons, the Defendant's MOTION TO RECONSIDER PORTION OF OPINION DENYING MOTION TO DISMISS RELATING TO LACK OF EVIDENCE THAT MR. DIAZ WOULD HAVE APPLIED FOR VOLUNTARY DEPARTURE (ECF No. 51) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: May 29, 2019